# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Terry DiBacco,**
**Plaintiff Below, Petitioner**

**vs) No. 17-0535** (Brooke County 11-C-50)

**City of Weirton, West Virginia,**
**and The Board of Trustees of**
**The Policemen's Pension or Relief Fund**
**of The City of Weirton, Inc.,**
**Defendants Below, Respondents**

**FILED**

**October 15, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Terry DiBacco, by counsel Patrick S. Cassidy and Timothy F. Cogan, appeals the order of the Circuit Court of Brooke County, entered on May 18, 2017, granting respondents' motion for summary judgment. Respondents City of Weirton and the Board of Trustees of the Policemen's Pension or Relief Fund of the City of Weirton, Inc., appear by counsel Thomas E. Buck.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner, a City of Weirton police officer since 1993, was placed on administrative leave in 2009, after the police department received several complaints suggesting that he displayed erratic on-duty behavior.[1] While on administrative leave, petitioner received his full salary; however, he was relieved of K9 duty, and lost the pay supplement associated with that

---

[1] The basis for many of petitioner's arguments hinges on his general dispute about the validity of the complaints that were documented and described by the police department. We find it unnecessary to recount those complaints in detail, but we note that respondent established the reporting of these complaints with specific, detailed testimony, as well as the official reports of the complaints. Most reports identify the person who made the complaint. Though plaintiff argues that the reports were fabricated, were reported after the fact to support his suspension, or were not "investigated" or "substantiated" according to department protocol, his arguments are based on his own testimony only. It does not appear that the complainants were deposed.

assignment. Petitioner was evaluated by at least three professionals in 2009 and 2010, each of whom found that he was not fit for duty as a police officer. Petitioner did not produce a release to return to work while on leave, and in the six-year course of the litigation preceding this appeal he did not offer any physician's opinion that he is fit to return to police work.[2] Petitioner's administrative leave ended in January of 2011, and he filed an application for disability retirement benefits. The application was granted and he began receiving benefits around February of 2011. Shortly thereafter, petitioner filed the civil complaint that initiated this action, claiming that respondents discriminated against him based on a perceived disability[3] and that they engaged in a"[c]onspiracy to violate [his] civil rights under West Virginia Code Civil Service." At the conclusion of the litigation, respondents moved for and the circuit court granted summary judgment.

On appeal, petitioner appears to challenge the circuit court's (1) striking of an affidavit offered by him; (2) granting summary judgment on the question of whether petitioner was "perceived as" disabled; (3) "dismiss[ing]" petitioner's due process claims; and (4) "dismiss[ing]" petitioner's public policy claims.[4] As with all appeals from a circuit court's grant

---

[2] Petitioner argues that he was led to believe that it was his physical, rather than his behavioral, health that required certification. However, his treating physician testified that he informed petitioner in April of 2009, that only a psychologist or psychiatrist could certify his fitness.

[3] West Virginia Code § 5-11-3 (2018) clarifies that the protections afforded to a person having a disability extend to a person who is "regarded as having [a substantially limiting] impairment."

[4] We caution counsel to direct greater attention to conforming his pleadings to the standards set forth in our Rules of Appellate Procedure. First, we note that petitioner filed, without seeking leave of the Court, a brief exceeding the page limitation set forth in Rule 38. Pursuant to that rule, the Clerk would have been within his authority to refuse to accept the document for filing when it was received on September 18, 2017.

Second, we note that the appendix record contains several documents labeled "not included in the record below; included for the convenience of the Court." However, Rule 7(a) specifies that the contents of the appendix are comprised of "accurate reproductions of the papers and exhibits *submitted to the lower court. . . .*" (Emphasis supplied.) Inasmuch as the parties failed to include the motion for summary judgment, the memorandum supporting that motion, the exhibits attached to the memorandum, or the relevant documents in opposition, the Court obtained these essential documents on its own motion. The Court is under no obligation to do so. We have repeatedly cautioned that Rule 10(c)(7) requires that arguments "contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal."

(continued . . .)

of summary judgment, our review is de novo. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

Petitioner's first assignment of error implicates an affidavit, executed by petitioner, that petitioner first offered as an exhibit to his response to respondents' motion for summary judgment. Though he had previously offered deposition testimony, petitioner asserted for the first time in the subject affidavit that he was discharged in retaliation for having witnessed the chief of police engaged in inappropriate behavior.[5] We find that petitioner's self-serving rebuttal affidavit made allegations that should have been raised in response to earlier discovery, and particularly in response to the deposition question, "What reason would . . . officers have to conspire against you?" However, petitioner's answer to that question was simply, "[The police chief] used me as an example, I feel." Petitioner made no prior allegations concerning retaliation, and his late-hour assertions are therefore suspect. *See Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 61 n.14, 459 S.E.2d 329, 338 n.14 (1995) (finding that self-serving assertions without a factual basis will not defeat a well-supported motion for summary judgment). Moreover, petitioner offered no reason for failing to earlier assert that retaliation was a factor in his placement on administrative leave. We thus find no error in the circuit court's disregarding the affidavit.

---

Finally, we note that our understanding of petitioner's asserted assignments of error is drawn from the Table of Contents of petitioner's brief, the only place such assignments arguably appear, though our Rule 10(c)(3) explicitly requires that "[t]he brief opens with a list of the assignments of error that are presented for review[.] . . ." As noted by respondent's counsel, petitioner has peppered his entire brief—including the statement of facts—with legal arguments not necessarily encompassed in these de facto assignments of error. This haphazard approach compels us to again declare our oft-repeated admonition that "[j]udges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991); *accord Teague v. Bakker*, 35 F.3d 978, 985 n.5; *State v. Honaker*, 193 W. Va. 51, 56 n.4, 454 S.E.2d 96, 101 n.4 (1994).

[5] Petitioner filed a complaint in 2011 that asserted causes of action for "perception of disability discrimination" and violation of petitioner's "rights under [the] West Virginia Code [of] Civil Service." He later, in 2015, filed an amended complaint asserting causes of action for disability discrimination based on perception and public policy violations of civil service protections, and also asserted a cause of action for violation of the due process rights provided to him by the West Virginia Constitution. Though afforded time by the circuit court to do so, petitioner never amended his complaint to assert a claim for retaliatory discharge. He maintains that he properly asserted a claim for disability perception instead of retaliatory discharge, and that his assertion of retaliation is simply evidence of respondents' "motivation." Petitioner's argument is nonsensical. Evidence of retaliation is supportive of a retaliatory discharge claim rather than a disability discrimination claim, and petitioner's assertion that he suffered retaliation, in the face of his conscious choice to forego a claim of retaliatory discharge, is perplexing. We thus find these assertions set forth in the affidavit irrelevant to the claims considered by the circuit court and, in turn, by this Court on appeal.

3

We turn to petitioner's second assignment of error, wherein he argues that the circuit court ignored evidence showing that respondent perceived petitioner as disabled. In support of this assignment of error, however, petitioner argues that respondents had a duty to accommodate his perceived disability, without specifically identifying any evidentiary basis that he was perceived as having an impairment.[6] An employer's quest for reassurance that its employee is fit for duty where, as here, the evidence reveals a legitimate concern about the employee's performance ability is not proof that the employee was regarded as impaired. We sometimes utilize decisions interpreting the federal Americans With Disabilities Act when interpreting the West Virginia Human Rights Act. *See Hosaflook v. Consolidation Coal Co.*, 201 W. Va. 325, 332, n.10, 497 S.E.2d 174, 181 n.10 (1997)("[C]ases decided under the ADA are also helpful in deciding our cases under the West Virginia Human Rights Act"). *Cf. Skaggs v. Elk Run Coal Co.*, 198 W. Va. 51, 68, 479 S.E.2d 561, 578 (noting that "the Legislature amended the Human Rights Act to define disability to bring the law into line with the federal authorities."). We again find such a case helpful in explaining our rationale:

> We have not decided whether an employer's request for an evaluation of its employee is, in and of itself, sufficient to show that the employer regarded the employee as disabled for purposes of the ADA. Of the courts of appeals to address this issue, however, all have concluded that it is not. *See Tice* [*v. Centre Area Transp. Authority*], 247 F.3d [506] at 508–9 [3rd Cir. 2001] ("[A]n employer's request for a medical examination, standing alone, is not sufficient to establish that the employer regarded the employee as disabled, and thus cannot itself form the basis for establishing membership in the protected class under the ADA."); *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 811 (6th Cir.1999) (same); *Colwell v. Suffolk Cnty. Police Dep't*, 158 F.3d 635, 647 (2d Cir.1998) (same). As the Third Circuit explained in *Tice*, an ADA plaintiff must point to other evidence showing that his employer regarded him as disabled—that is, substantially limited in a major life activity—and not just that it harbored concerns about his ability to perform his job. *See* 247 F.3d at 513; *see also Taylor v. Fed. Express Corp.*, 429 F.3d 461, 464 (4th Cir. 2005) (explaining that "major life activity of working" is not limited to one position or type thereof).

---

[6] The sole evidence offered by petitioner in support of this claim is the testimony of Dean Makricostas, an attorney who assisted petitioner without having been retained, that the chief of police, "one time," used the term "crazy" in reference to petitioner. However, the transcript of that testimony reflects that Mr. Makricostas clarified that he was referring to a specific incident in which petitioner was observed "ranting and raving." Mr. Makricostas testified, "Again, not in—you know, . . . I took it as not a diagnosis. I just took it as, you know, when two people fight, like when Dan and I fight here at the office, I'm like, Man, you're crazy. You know, that's the way I took it."

4

*Coursey v. Univ. of Maryland E. Shore*, 577 F. App'x 167, 174-75 (4th Cir. 2014). For these reasons, we find that petitioner has failed to make a prima facie case of discrimination prohibited by the West Virginia Human Rights Act[7], and we find no error in the circuit court's decision.

Finally, we address petitioner's third and fourth assignments of error, wherein he argues that the circuit court erred in finding that neither petitioner's state constitutional rights nor his civil service protections were violated by his placement on administrative leave and his eventual option for disability retirement. We find that the circuit court adequately addressed both issues. As the circuit court found, and as further discussed above, petitioner was placed on indefinite administrative leave in April of 2009, with pay, for just cause. Multiple physicians thereafter found that petitioner was not fit for duty as a police officer. Petitioner remained on administrative leave, with the option to address his fitness, until his leave was ended by the retirement election in January of 2011. Petitioner offered no evidence that he was fit for duty, and it is undisputed that he sought no treatment to address any issue affecting his performance. Furthermore, he did not request a hearing pursuant to police civil service protections afforded by chapter 14, article 8 of the West Virginia Code. Under these circumstances, we find that petitioner was not denied any protection of the laws.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 15, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II suspended and therefore not participating.

---

[7] According to syllabus point 3, *Conaway v. E. Associated Coal Corp.*, 178 W. Va. 164, 166, 358 S.E.2d 423, 425 (1986):

> In order to make a prima facie case of employment discrimination under the West Virginia Human Rights Act, W.Va. Code § 5–11–1 et seq. (1979), the plaintiff must offer proof of the following: (1) That the plaintiff is a member of a protected class. (2) That the employer made an adverse decision concerning the plaintiff. (3) But for the plaintiff's protected status, the adverse decision would not have been made.